## EDMUND THOMAS *vs.* THE BOSTON AND PROVIDENCE RAIL ROAD CORPORATION.

Proprietors of a rail road, who transport goods over their road, and deposit them in their warehouse without charge, until the owner or consignee has a reasonable time to take them away, are not liable, as common carriers, for the loss of the goods from the warehouse, but are liable, as depositaries, only for want of ordinary care.

IN this action the defendants were charged, as common carriers, with the loss of a roll of leather. At the trial in the court of common pleas, before *Wells*, C. J. various points were ruled and various exceptions alleged, which ultimately became immaterial. The following is a report of all that is necessary to be here inserted:

It was proved or admitted that four rolls of leather, the property of the plaintiff, were delivered to the defendants at Providence, to be transported to Boston; that they were so transported, and were deposited at the defendants' depot at Boston; that a teamster, employed by the plaintiff, shortly after called at the depot, with a bill of the freight receipted by the defendants, and inquired for the leather; that it was pointed out to him by the defendants' agent, Allen, who had charge of the depot; that the teamster then took away two of the rolls, and soon after called again and inquired for the other two; that he was directed where to look for them and that he found only one.

The defendants, to show that they were not liable for any loss occurring while the goods were deposited at their depot, offered to prove that they had, prior to this time, posted up notices containing this expression: " merchandize, while in the company's store-houses, is at the risk of the owners thereof; " and that these notices had been so long posted up, and so extensively circulated, that the plaintiff must be presumed to have known their contents; and that the plaintiff, prior to the time of the loss, had frequently employed the defendants to transport goods for him. The judge ruled that the evidence was inadmissible.

The jury were instructed " to ascertain from all the evidence what was the contract between the parties, and if they were satisfied that it was the usage and practice of the defendants, not only to transport goods over the road, but also to deposit them in their warehouses, without charge, until the owner should have a reasonable time to remove them, and that they did provide warehouses or depots for the purpose of so storing the goods, this usage and conduct would be sufficient evidence for the jury to find that it was a part of the contract that the defendants should so store and keep the goods delivered to them for transportation ; and that, if such was the contract, then their liability as common carriers would continue while the goods were stored in the depot ; but that in the present case, if the goods, after having been so stored, were actually delivered to the plaintiff or his agent, or if an arrangement was entered into between the parties, by themselves or their agents, by which the defendants agreed to part with the custody and control over the property, and the plaintiff agreed to assume the custody and control over it, although there was no actual delivery, or if the plaintiff or his agent so improperly conducted himself, either by language or acts, as to lead the defendants or their agents to believe (they acting with proper care and discretion) that the plaintiff had undertaken to assume the control of the property, and had discharged the defendants from any further responsibility, and the defendants, in consequence, ceased to take any further charge or oversight of the property, the responsibility of the defendants would be thereby terminated : That the burden of proving these facts was upon the defendants."

A verdict was returned for the plaintiff, and the defendants alleged exceptions to the instructions given to the jury.

*F. Hilliard,* for the defendants. The evidence of the posted notice should have been admitted. Whether it was sufficient to sustain the defence was a question for the jury, on all the facts proved. The cases of *Dwight* v. *Brewster,* 1 Pick. 50, and *Phillips* v *Earle* 8 Pick. 182. imply that

40 *

a common carrier's liability may be limited by notice. See also *Boyce* v. *Anderson,* 2 Pet. 155. Story on Bailm. § 554 *& seq.* 2 Phil. Ev. 77. 2 Stark. Ev. 337. 2 Stephens N. P. 970. Chit. Con. (5th Amer. ed.) 489. 2 Stephen's Com. 135. *Down* v. *Fromont,* 4 Campb. 40. *Munn* v. *Baker* 2 Stark. R. 255.

After the leather was deposited in the defendants' depot, they were liable, if at all, only as warehousemen, and for the omission of ordinary care. *Garside* v. *Proprietors of Trent and Mersey Navigation,* 4 T. R. 581. *Young* v. *Smith,* 3 Dana, 92. *Rowe* v. *Pickford,* 1 Moore, 526, and 8 Taunt. 83. *Foster* v. *Frampton,* 6 Barn. & Cres. 107. *Allan* v. *Gripper,* 2 Crompt. & Jerv. 218, and 2 Tyrw. 217.

*D. A. Simmons & Kingsbury,* for the plaintiff. As the defendants cannot exempt themselves from responsibility by giving notice that they will not be liable, (Story on Con. § 468,) the evidence of such notice was rightly excluded. *Cole* v. *Goodwin,* 19 Wend. 251. *Gould* v. *Hill,* 2 Hill's (N. Y.) Rep. 623.

The defendants are liable as common carriers, and not merely as warehousemen, until the goods are delivered to the owner, if he call for them within a reasonable time. 1 Bell's Com. 469. *Streeter* v. *Horlock,* 1 Bing. 34, and 7 Moore, 283. *Golden* v. *Manning,* 3 Wils. 429, and 2 W Bl. 916. *Forward* v. *Pittard,* 1 T. R. 27. *Ellis* v. *Turner,* 8 T. R. 531. *Matter of Webb,* 8 Taunt. 443, and 2 Moore, 500. *Davis* v. *Garrett,* 6 Bing. 716. *Hyde* v. *Proprietors of Trent and Mersey Navigation,* 5 T. R. 389. *Duff* v. *Budd,* 3 Brod. & Bing. 177. *Bodenham* v. *Bennet,* 4 Price, 34. *Birkett* v. *Willan,* 2 Barn. & Ald. 356. *Garnett* v. *Willan,* 5 Barn. & Ald. 58. *Storr* v. *Crowley,* 1 M'Clel. & Y. 129. *Stephenson* v. *Hart,* 4 Bing. 476. *Bourne* v. *Gatliff,* 3 Man. & Grang. 690, and 4 Bing. N. R. 332.

The decision was made at October term 1846.

HUBBARD, J. Sundry rulings were made during the progress of the trial, by the presiding judge, to which the de-

fendants' counsel excepted, but which it is unnecessary now to consider.

The important question presented for the consideration of the court is, whether the defendants are common carriers of the goods and merchandize intrusted to their care ; and if they are, how long this relation continues. The charge on this part of the case was, that the jury, from all the evidence in the case, were to ascertain what was the contract between the parties ; and if, from the evidence, they were satisfied that it was the usage and practice of the defendants, not only to transport goods over their road, but also to deposit them in their warehouses, without charge, until the owner of the goods should have reasonable time to remove them, and that they did provide warehouses or depots for the purpose of so storing the goods, then this usage and conduct wou'l be sufficient evidence for the jury to find that it was a part of the contract that the defendants should so store and keep goods delivered to them for transportation ; and that, if such was the contract, their liabilities as common carriers would continue while the goods were so stored in the depot.

This is an important question to our community, from the magnitude and variety of the interests concerned in it. The introduction of rail roads into the State has been followed by their construction over the great lines of travel, of passengers and transportation of merchandize ; and the proprietors of these novel and important modes of travel and transportation, which have received so much public favor, have become the carriers of great amounts of merchandize. They advertise for freight ; they make known the terms of carriage ; they provide suitable vehicles, and select convenient places for receiving and delivering goods ; and, as a legal consequence of such acts, they have become common carriers of merchandize, and are subject to the provisions of the common law which are applicable to carriers. By the common law, carriers are, to a certain extent, the insurers of the goods they carry, and are bound to deliver them agreeably to their engagements, subject only to the exceptions which

may prevent a delivery, arising either from the act of God or from public enemies. From the act of God : As where the loss is caused by lightning or tempests ; and on the water, where such exceptions are distinguished as perils of the sea. For a loss arising from such a cause they are not held responsible ; because no vigilance can prevent nor foresight guard against such liabilities, they being beyond human control ; and a guaranty against a loss from such a cause can only be provided for by a special contract of indemnity, well known as the contract of insurance. And so of public enemies · The government itself is called upon to protect its subjects from loss from such a hazard ; as private citizens have not the power to furnish the security and protection required. But in all other cases the common carrier is held responsible, on the ground that he may guard against the accidents and casualties to which the goods, in their transit, are exposed. And this law is enforced on principles of public policy, to prevent fraud and collusion with thieves and robbers ; the owner of the goods, not being generally in a situation to oversee and protect his property, having placed it in the possession and under the control of the carrier. And the pay of carriers is graduated upon such liability.

But there is a material distinction between common carriers and other bailees of goods, as to the extent of their liability in the event of loss of the goods, or damage happening to them. The former are liable, as before remarked, in all cases, with certain precise exceptions ; while the latter are only liable for want of proper care and reasonable diligence, according to the character of the bailment. And the question in the present case is, whether the defendants are liable as common carriers, after the goods are safely stored in their merchandize or warehouse depot.

The transportation of goods and the storage of goods are contracts of a different character ; and though one person or company may render both services, yet the two contracts are not to be confounded or blended ; because the legal liabilities attending the two are different. The proprietors of a

rail road transport merchandize over their road, receiving it at one depot or place of deposit, and delivering it at another, agreeably to the direction of the owner or consignor.   But from the very nature and peculiar construction of the road, the proprietors cannot deliver merchandize at the warehouse of the owner, when situated off the line of the road, as a common wagoner can do.   To make such a delivery, a distinct species of transportation would be required, and would be the subject of a distinct contract.   They can deliver it only at the terminus of the road, or at the given depot where goods can be safely unladed and put into a place of safety.   After such delivery at a depot, the carriage is completed.   But, owing to the great amount of goods transported and belonging to so many different persons, and in consequence of the different hours of arrival, by night as well as by day, it becomes equally convenient and necessary, both for the proprietors of the road and the owners of the goods, that they should be unladed and deposited in a safe place, protected from the weather and from exposure to thieves and pilferers.   And where such suitable warehouses are provided, and the goods, which are not called for on their arrival at the places of destination, are unladed and separated from the goods of other persons, and stored safely in such warehouses or depots, the duty of the proprietors as common carriers is, in our judgment, terminated.   They have done all they agreed to do; they have received the goods, have transported them safely to the place of delivery, and, the consignee not being present to receive them, have unladed them, and have put them in a safe and proper place for the consignee to take them away ; and he can take them at any reasonable time. The liability of common carriers being ended, the proprietors are, by force of law, depositaries of the goods, and are bound to reasonable diligence in the custody of them, and consequently are only liable to the owners in case of a want of ordinary care.

In the case at bar, the goods were transported over the defendants' road, and were safely deposited in their merchan-

dize depot, ready for delivery to the plaintiff, of which he had notice, and were in fact in part taken away by him; the residue, a portion of which was afterwards lost, being left there for his convenience. No agreement was made for the storage of the goods, and no further compensation paid therefor; the sum paid being the freight for carriage, which was payable if the goods had been delivered to the plaintiff immediately on the arrival of the cars, without any storage. Upon these facts, we are of opinion, for the reasons before stated, that the duty of the defendants, as common carriers, had ceased on their safe deposit of the plaintiff's goods in the merchandize depot; and that they were then responsible only as depositaries without further charge, and consequently, unless guilty of negligence in the want of ordinary care in the custody of the goods, they are not liable to the plaintiff for the alleged loss of a part of the goods.

This view, which we have taken of the relation of the defendants to the plaintiff, as common carriers in the transportation of his goods, and as the depositaries of them when stored in their warehouse, and the distinct liabilities arising out of these different relations, is fully justified by the decision of the court of King's Bench, in the case of *Garside* v. *Proprietors of Trent and Mersey Navigation*, 4 T. R. 581. In that case, the defendants were common carriers between Stourport and Manchester. The plaintiff's goods were taken at Stourport to be carried to Manchester, and from Manchester, by another carrier, to Stockport; and by agreement, they were to be kept in the defendants' warehouse, without charge, and to be kept till called for by the carrier for Stockport. A parcel of the plaintiff's goods, whilst thus stored, after being transported by the defendants from Stourport to Manchester for the plaintiff, were accidentally burnt with the warehouse, and the plaintiff brought his action to recover the value of them of the defendants, charging them as common carriers. But the court were clearly of opinion that the duties of the defendants, as common carriers, were ended on the storing of the goods and that they then stood in the situation only of

warehousemen, and were therefore not liable for the loss of the goods. Buller, J. remarked, that "the keeping of the goods in the warehouse is not for the convenience of the carrier, but of the owner of the goods ; for when the voyage to Manchester is performed, it is the interest of the carrier to get rid of them directly ; and it was only because there was no person ready at Manchester to receive these goods, that the defendants were obliged to keep them." And so in the case at bar, the plaintiff, who lived in a neighboring town, was not ready to receive all his goods, and they were left for his convenience, and not for any benefit to the defendants. See also *Hyde* v. *Proprietors of Trent and Mersey Navigation*, 5 T. R. 389. *Matter of Webb*, 8 Taunt. 443. *Gibson* v. *Culver*, 17 Wend. 305. 2 Kent. Com. (3d ed.) 600. Story on Bailm. §§ 446 – 450.

A great many cases have arisen, in which the question has been discussed whether the parties, who were attempted to be charged, were, under the particular circumstances proved, chargeable as common carriers or not, and how far that liability might be limited or restrained by special contract or by public notice. But these cases do not, in our judgment, overrule or materially affect the decision in *Garside* v. *Proprietors of Trent and Mersey Navigation*, nor shake the principles upon which it rests. Neither do we intend to discuss the rights of passengers on rail roads, in regard to their persons and luggage, nor the peculiar liabilities of the proprietors in regard to both. We confine ourselves strictly to the case of merchandize deposited after it has been transported to its place of destination. The doctrine of the common law, as applied to common carriers, is founded in practical wisdom and has long been consistently enforced ; and we are neither disposed to relax its requisitions nor give countenance to ingenious devices by which its provisions may be evaded. But, at the same time, we are equally indisposed to stretch it beyond its proper limits, or to apply it to cases which fall neither within its letter nor its spirit.

In the course of the trial, the defendants offered to prove

that, prior to the transportation of the plaintiff's leather, they had posted up notices containing this provision, viz. " merchandize, while in the company's store-houses, is at the risk of the owners thereof ; " and that from the length of time they had been posted, and the prior dealings of the plaintiff with them, he must be presumed to have had knowledge of the fact ; but the evidence was not admitted. We are not called upon, in this case, to decide as to the legal character of such notices ; a subject which has been fully considered in this country, as well as in England. See *Hollister* v. *Nowlen,* 19 Wend. 234, and *Cole* v. *Goodwin,* 19 Wend. 251, and the long list of English authorities there cited, on page 269.

In the view of the law bearing upon this case, viz. that the defendants are not liable as common carriers, the notice, we think, becomes unimportant, as it clearly would not screen the defendants from loss occasioned by their negligence or want of ordinary care ; and beyond that they are not chargeable. Other questions which arose upon the trial it is not necessary to notice.

For the reasons stated, we think the learned judge erred in his instructions to the jury, that the liability of common carriers continued to attach to the defendants while the goods were stored in their depot. The verdict must therefore be set aside. Upon the evidence, as reported, there appears little ground to charge the defendants with want of ordinary care in the custody of these goods ; but that is a question to be settled on the further trial of the case.

*New trial to be had in this court.*